```
 1
 2
 3
 4
 5
 6
 7
 8                    UNITED STATES DISTRICT COURT
 9                  NORTHERN DISTRICT OF CALIFORNIA
10
11   ESTATE OF ERLINDA URSUA,    )
     LORENZO URSUA, individually )
12   and as Executor for the     )    No. C 04-3006 BZ
     ESTATE OF ERLINDA URSUA,    )
13   ROXANNE BAUTISTA and RHODORA)    ORDER GRANTING DEFENDANT
     URSUA,                      )    ALAMEDA COUNTY'S MOTION FOR
14                               )    SUMMARY JUDGMENT
                Plaintiff(s),    )
15                               )
           v.                    )
16                               )
     ALAMEDA COUNTY MEDICAL      )
17   CENTER, et al.,             )
                                 )
18              Defendant(s).    )
                                 )
19
```

Plaintiffs, the estate and family of Dr. Erlinda Ursua, filed this action pursuant to 42 U.S.C. § 1983 against defendant Alameda County Medical Center (the "Medical Center"), alleging a violation of Dr. Erlinda Ursua's Fourteenth Amendment rights.  They also sued Alameda County (the "County") and ABC Security Service, Inc. ("ABC") for negligence.[1]  Now before me is the County's motion for summary

---

[1] All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

1

judgment.  For a full description of the material facts, see the Order Granting Defendant Alameda County Medical Center's Motion for Summary Judgment.

In response to plaintiffs' claim, the County has asserted design immunity under California Government Code § 830.6. Design immunity is a complete affirmative defense to plaintiff's negligence claim.  If the County demonstrates it is entitled to design immunity, recovery may be denied regardless of the evidence presented relating to a defective design.  <u>Bane v. State of California</u>, 208 Cal. App. 3d 860, 866 (1989).  Whether a public body is entitled to design immunity is a question of law for the court to decide. <u>Mozzetti v. City of Brisbane</u>, 67 Cal. App. 3d 565, 573 (1977).

The three elements of design immunity are:  (1) the causal relationship between the design and the accident; (2) the discretionary approval of the design prior to construction; and (3) substantial evidence supporting the reasonableness of the design.  <u>Hefner v. County of Sacramento</u>, 197 Cal. App. 3d 1007, 1014 (1988).  The County bears the burden of establishing all of the elements.  <u>Mozzetti</u>, 67 Cal. App. 3d at 574.

Plaintiffs and the County agree on the first element of design immunity; there was a causal relationship.  Plaintiff contends that the defective design of the John George Psychiatric Pavilion (the "JGPP"), in particular, the isolation of Room B18 (also known as Room 1319), where Dr. Ursua conducted the history and examination of Pavon, contributed to Dr. Ursua's death (Joint Statement of

2

Undisputed Facts ("UF") 16-17). The second element is also established. It is undisputed that the Board of Supervisors of Alameda County approved as recommended the design of the JGPP, which included the location and placement of Room B18 and the presence of the panic button in Room B18, by resolution R-89-123 (UF 20; Wilson Decl., Exh. A, Summary Action Minutes at 3).

Plaintiffs dispute the County has satisfied the third element of design immunity, that substantial evidence supports the reasonableness of the design.[2] Plaintiffs argue that the County must show the architects or other decision-makers specifically discussed and approved the safety and location of Room B18. I disagree. Requiring discussion and consideration of the safety of each room in the JGPP to show reasonableness of the design is not only impractical, it runs counter to the rationale behind design immunity.

As for plaintiffs' arguments regarding the substantial evidence of the reasonableness of the design, I focus on two points. First, the presence of panic buttons in the rooms is evidence that the architects did consider staff safety, as well as other objectives of staffing, space and cost efficiencies and effective treatment, in designing the building.

Second, the Court can find no authority to support

---

[2] During oral argument held on October 26, 2005, plaintiffs and the County agreed that the statute requires that substantial evidence of reasonableness be in the record before the Court, not in the record before the Board.

3

plaintiffs' contention that substantial evidence of reasonableness must include evidence that the specific risks of which plaintiffs now complain were considered.  Most design immunity cases, in fact, seem to defer to the judgment and approval of the public body or municipality without any requirements on the detail, form and substance of approval or reasonableness.  See <u>Bay Area Rapid Transit Dist. v. Superior Court</u>, 46 Cal. App. 4th 476 (1996); <u>Higgins v. State of California</u>, 54 Cal. App. 4th 177 (1997).  Where the courts have denied the defense of design immunity, some violation of guidelines or standards existed.  See <u>Hernandez v. Dept. of Transportation</u>, 114 Cal. App. 4th 476 (2004)(involving a design that violated Caltrans' own guardrail-installation guidelines); <u>Levin v. State of California</u>, 146 Cal. App. 3d 410 (1983)(reversing summary judgment because a steep embankment slope was not reflected in the design plan and did not conform to the state's own standards).[3]

In the instant case, multiple agencies approved the design of the JGPP.  The County's Department of Public Works reviewed and approved the proposed plans showing the placement

---

[3] Each of the cases denying design immunity which plaintiffs cite in their letter brief is distinguishable.  The court in <u>Davis v. Cardova Park and Recreation District</u>, 24 Cal. App. 4th 789 (1972) focused on the reasonableness of a design for a fish pond that defendants failed to foresee would draw children as a swimming pond.  <u>Levin</u> involved a design that violated the state's own standards.  The court rejected defendants' design immunity defense in <u>Arreola v. County of Monterey</u>, 99 Cal. App. 4th 722, 759 (2002), because the only foundation for the engineers' conclusion that the design was reasonable was the presumption that someone or something else would take care of flooding.

1  of Room B18 and the panic button in Room B18 (UF 22; Wilson
2  Decl., Exh. A, Public Works Agency Letter).  After the
3  approval of the Board of Supervisors, the Office of Statewide
4  Health Planning and Development, the Office of the State
5  Architect and the State Fire Marshall approved the JGPP plans
6  (Nash Decl. ¶ 4).  There is no evidence that the County
7  violated any laws, codes or regulations in designing the JGPP.
8  The design "did not violate any existing standard of care" and
9  "[t]here are no federal or state codes, regulations or
10 standards which dictate the placement of an exam room in a
11 facility such as JGPP or prohibit the configuration which was
12 designed in this case" (UF 23-24).

13      Moreover, the issue is not whether the design could be
14 found to be unreasonable, but "whether there is *any* reasonable
15 basis on which a reasonable public official could initially
16 have approved the design" (emphasis in original).  Compton v.
17 City of Santee, 12 Cal. App. 4th 591, 597 (1993).  Assuming
18 there is a foundation for the reasonableness of a design, the
19 public body should get the benefit of the defense of design
20 immunity.  See Cameron v. State of California, 7 Cal. 3d 318,
21 326 (1972)("[T]o permit reexamination in tort litigation of
22 particular discretionary decisions where reasonable men may
23 differ as to how the discretion should be exercised would
24 create too great a danger of impolitic interference with the
25 freedom of decision-making by those public officials in whom
26 the function of making such decisions has been vested.")  The
27 legislature is clear; the courts are not to reweigh reasonable
28

5

1  decisions made by public bodies which approved the design.
2  <u>Bane</u>, 208 Cal. App. 3d at 866.  The County has established the
3  third element of design immunity.  Substantial evidence of the
4  reasonableness of the design of the JGPP exists.[4]

5  Because Alameda County has satisfied its burden and
6  established that it is entitled to the defense of design
7  immunity, **IT IS ORDERED** that its motion for summary judgment
8  is **GRANTED**.

Dated: November 8, 2005

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\ESTATE OF URSUA\SJM.COUNTY.ORD.wpd

---

[4] At the hearing, plaintiffs asserted that the design had changed, and the original JGPP plans had not shown the hallway leading to Room B18.  In their papers they also argue that staff had expected Room B18 to be close to the nurses' station (Seaton Decl., Wilson Deposition at 21).  Plaintiffs further contend that the chief architect had predicated his design on the assumption that staff members would be accompanied when attending patients in the rooms (PF 45) and that the designers were uncertain about Room B18's function, disagreeing about whether it was supposed to be an interchangeable interview or examination room (PF 24-27).  The record is unclear on these disputed facts, but even assuming plaintiffs are correct, they do not negate the reasonableness of the design.  The plans eventually approved by the Board and other agencies did show the hallway with the current placement of Room B18.  Plaintiffs and the County agree that the JGPP was constructed in accordance with the plans approved by the Board of Supervisors (UF 20).  There is no evidence that the architects would have designed the JGPP differently if they knew that sometimes staff such as Dr. Ursua would be unaccompanied in Room B18 or that Room B18 would have different uses or functions.