```
 1
 2
 3
 4
 5
 6
 7
 8                    UNITED STATES DISTRICT COURT
 9                   NORTHERN DISTRICT OF CALIFORNIA
10
11  ESTATE OF ERLINDA URSUA,    )
    LORENZO URSUA, individually )
12  and as Executor for the     )   No. C 04-3006 BZ
    ESTATE OF ERLINDA URSUA,    )
13  ROXANNE BAUTISTA and RHODORA)   ORDER DENYING DEFENDANT
    URSUA,                      )   ABC SECURITY SERVICE, INC.'s
14                              )   MOTION FOR SUMMARY JUDGMENT
              Plaintiff(s),     )
15                              )
         v.                     )
16                              )
    ALAMEDA COUNTY MEDICAL      )
17  CENTER, et al.,             )
                                )
18            Defendant(s).     )
                                )
19
```

Plaintiffs, the estate and family of Dr. Erlinda Ursua, filed this action pursuant to 42 U.S.C. § 1983 against defendant Alameda County Medical Center (the "Medical Center"), alleging a violation of Dr. Erlinda Ursua's Fourteenth Amendment rights. They also sued Alameda County and ABC Security Service, Inc. ("ABC") for negligence.[1] Now before me is ABC's motion for summary judgment. For a full

---

[1] All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

1

description of the material facts, see the Order Granting Defendant Alameda County Medical Center's Motion for Summary Judgment.

ABC is moving for summary judgment on these grounds: (1) It did not owe a duty to Dr. Ursua, (2) It did not breach such duty because the Medical Center directed ABC to discontinue the roving guard position, (3) Its conduct did not cause plaintiff's death.

ABC contends that it did not owe Dr. Ursua any duty because no special relationship existed between ABC and Dr. Ursua such that ABC may be held liable for Dr. Ursua's injuries. Under California law, a special relationship may be contractually established. See Seo v. All-Makes Overhead Doors, 97 Cal. App. 4th 1193, 1203 (2002); see also Rest. 2d Torts § 324A. A security company may be held liable where its failure to act reasonably under the circumstances causes injury to those it has contracted to protect. See Marois v. Royal Investigation and Patrol, Inc., 162 Cal. App. 3d 193, 199-200 (1984)("By contracting with the business to provide security services, the security guard creates a special relationship between himself and the business's customers"); Trujillo V. G.A. Enterprises, 36 Cal. App. 4th 1105, 1008 (1995); Rosh v. Cave Imaging Systems, Inc., 26 Cal. App. 4th 1225 (1994)(affirming a verdict against a security guard company for an employee's injury by a terminated worker).[2]

---

[2] Titus v. Canyon Lake Property Owners Assoc., 188 Cal. App. 4th 906 (2004) which holds that a security company hired by property owners does not owe a duty to third parties, is distinguishable since Dr. Ursua was an employee of the Medical

2

1       Plaintiffs have established that a special relationship
2  existed between ABC and Ursua.  ABC does not dispute that it
3  entered into a contract with Alameda County, the Medical
4  Center and the John George Psychiatric Pavilion (the "JGPP")
5  to provide security services.  Pursuant to the contract, ABC
6  and its agents and employees established a special
7  relationship with the patients and staff at the JGPP and
8  assumed a duty to protect the patients and staff.  Dr. Ursua
9  was employed by the Medical Center and worked at the JGPP.
10 California courts have held that in cases where businesses
11 have contracted with a security company, guards have a duty to
12 employees, third parties and customers.  Trujillo, 36 Cal.
13 App. 4th at 1108; Marois, 162 Cal. App. 3d at 200.  If a
14 security company does not have a duty to protect employees of
15 the business that sought, hired and contracted for security,
16 it is hard to understand what duty it has.
17      The record discloses that ABC's duties included serving
18 and protecting employees such as Dr. Ursua.  In response to
19 staff complaints about the increasing number of assaults by
20 patients (Seaton Decl., Exh. 1, Wilson Deposition, Exh. 1),
21 the Medical Center "increased the number of security personnel
22 from 2 to 3 officers on all three shifts" (Seaton Decl., Exh.
23 8, Ferguson Deposition, Exh. 7 ("Ferguson Dep.")).  ABC's
24 Standing Post Orders required security guards to comply with
25 requests for assistance by staff members (Seaton Decl., Exh.

---

Center, not a third party.  To the extent it suggests a
security company does not owe a duty to employees of the person
who hired it, Titus represents a distinctly minority view and I
decline to follow it.

3

18, Thrower Deposition, Exh. 2 ("Thrower Dep.")), and the guards themselves understood their duties included responding to calls from staff members such as nurses (Seaton Decl., Exh. 19, Moreno Deposition at 38 ("Moreno Dep.")).  I find that ABC owed a duty to Dr. Ursua.

During the hearing on ABC's motion for summary judgment on October 26, 2005, ABC argued even if it owed a duty to Dr. Ursua, it did not breach that duty by failing to have a roving security guard on the day of Dr. Ursua's death because "[t]he rover was not that high a priority.  The lobby entrance and the red line were critical . . . " (Thrower Dep. at 39).  It is unclear from the record whether the Medical Center mandated the change in guard duty to contravene the Standing Post Order or ABC took it upon itself to rearrange its guards.  Mary Ferguson, the Medical Center's chief quality officer, understood that two of the security guards would be placed in the lobby and the third was to do continuous rounds of the inpatients' units (Ferguson Dep. at 29).  She testified that "[she] had no direct authority to ensure what [was] recommended took place.  [ABC's] job was to implement and to do their job as they saw fit" (Ferguson Dep. at 40).  Viewing this testimony favorably to plaintiffs, a jury could find that ABC contravened its Standing Post Orders and eliminated the roving security guard position at its discretion, and thus, ABC breached a duty to Dr. Ursua.

ABC next argues that it is entitled to summary judgment because plaintiffs cannot establish that its conduct caused

4

Dr. Ursua's death.³ ABC contends that it is sheer speculation whether a roving security guard making rounds through the halls and other areas of the JGPP would have prevented or stopped Pavon's assault in time for Dr. Ursua to survive. Causation is a question of fact for the jury unless the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury. Lies v. Farrell Lines, Inc., 641 F. 2d 765, 770 (9th Cir. 1981)(citing Leaf v. United States, 588 F. 2d 733, 736 (9th Cir. 1978)); Vickers v. United States, 228 F. 3d 944, 953-54 (9th Cir. 2000)("[C]ausation-related issues involve questions of fact, unless 'reasonable [persons] will not dispute the absence of causality.'"); Rosh, 26 Cal. App. 4th at 1235 ("The question of causation is one of fact; it becomes a question of law only where reasonable people do not dispute the absence of causation."); see also Rest. 2d Torts § 434(12). ABC bears the burden of establishing that there is no room for a reasonable difference of opinion on the issue of causation. Rosh, 26 Cal. App. 4th at 1235.

    A reasonable jury could find that ABC caused Dr. Ursua's death by failing to provide a roving security guard as

---

³ Summary judgment is appropriate when there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. There is no genuine issue of material fact where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Plaintiffs bear the burden of establishing a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). They also get the benefit of any discrepancies in the record; the Court must view the facts in the light most favorable to plaintiffs. Matsushita, 475 U.S. at 587.

5

required by its Standing Post Orders. The record abounds with examples of ABC's substandard service. Although ABC's Standing Post Orders called for its guards to make rounds and check areas such as the Acute Hospital, parking and administration areas hourly, Mr. Thrower, ABC's general manager testified that "[d]uring the day shift, there were no hourly rounds" (Thrower Dep. at 39). No one at the security company seems to have been aware of the hallway of the room in which Dr. Ursua died. Mr. Thrower testified that the first time he walked the hallway was when the hospital staff showed him after Dr. Ursua's death (Thrower Dep. at 28-29). Miscommunication was a recurring problem. The general manager, who was the liaison between ABC and the Medical Center, testified he was not aware OSHA had come in because of an increase in assaults (Thrower Dep. at 12). Guards did not understand the scope of their duties, and in their testimony, they contradict each other and the Standing Post Orders.

A reasonable jury could find that had ABC complied with its own orders or addressed some of these problems, it might have prevented Pavon's assault or intervened in time for Dr. Ursua to survive. A reasonable jury could conclude that the presence of a roving security guard might have dissuaded Pavon, or a roving guard might have heard Dr. Ursua struggling or noticed Pavon's unescorted presence in the hallway outside Room B18. A jury is in the best position to weigh these considerations and possibilities.

That ABC failed to provide the level of security which it had agreed to provide distinguishes this case from the cases

6

on which ABC relies.  The jury is not being asked to speculate whether additional guards or further layers of security might have prevented Dr. Ursua's death, or whether the unidentified assailant was not authorized to be on the premises.  See e.g. Saelzler v. Advanced Group 400, 25 Cal. 4th 763 (2001), Leslie G. B. Perry & Associates, 43 Cal. App. 4th 472 (1996).  See also Nola M. V. University of Southern California, 16 Cal. App. 4th 421, 424 (1993).

Because a reasonable jury could conclude that ABC caused Dr. Ursua's death, ABC has failed to satisfy its burden on the question of causation.  Whether plaintiffs succeed in proving their case against ABC at trial remains to be seen.  **IT IS ORDERED** that ABC's motion for summary judgment is **DENIED**.

Dated:  November 9, 2005

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\ESTATE OF URSUA\SJM.ABC.ORD.wpd

7